UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: GERALD GORE and      :   Chapter 7

     FRANCINE GORE,      :   Case No. 07-21103REF

         Debtors      :

# MEMORANDUM OPINION

## I. INTRODUCTION

Former counsel for Debtors, Eric L. Leinbach, Esquire ("Mr. Leinbach"), filed his Motion To Reconsider Order On the U.S [sic] Trustee's Motion To Disgorge Compensation of Attorney's Fees Entered on May 30, 2008 (the "Reconsideration Motion").[1] The United States Trustee filed an Objection to the

---

[1] Once again, I am writing about Mr. Leinbach's improprieties relating to his fees from his clients. I have written a number of opinions and entered many orders dealing with Mr. Leinbach's fees and fee applications, finding repeated instances of billing errors, overstated time, and other overcharges. See, e.g., In re Wise, 365 B.R. 516 (Bankr. E.D. Pa. 2007); In re Waltenberg, 2007 WL 1740274, No. 05-25084 (Bankr. E.D. Pa. Jun. 15, 2007); In re Bechtold, 2007 WL 1451512, No. 06-20586 (Bankr. E.D. Pa. May 15, 2007); In re Heffner, 2007 WL 1074879, No. 05-26495 (Bankr. E.D. Pa. Apr. 9, 2007); In re Dick, No. 05-23971, Order (Bankr. E.D. Pa. May 14, 2007); and In re Gray, No. 03-25573, Order (Bankr. E.D. Pa. Mar. 27, 2007). I have also ordered the disgorgement and return of a retainer paid to Mr. Leinbach by his former clients in In re Papp, No. 06-20973, Order (Bankr. E.D. Pa. Oct. 26, 2006), and the disgorgement and return of a fee paid to Mr. Leinbach by his former clients in In re Ramelah, No. 02-6185, Memorandum Opinion (Bankr. E.D. Pa. Oct. 14, 2008), for his failure to disclose all of the fees that he had received from them.

1

Reconsideration Motion and I conducted a hearing on it on July 3, 2008. At the hearing, I

took the matter under advisement and directed that Mr. Leinbach and the United States

Trustee file briefs, which they did. The matter is now ready for disposition.

The issue before me is whether I should reconsider the Order I entered on

May 30, 2008, in which I had granted the United States Trustee's Motion for

Disgorgement and Return of Fees Paid by Debtors to Eric L. Leinbach, Esq. (the

"Disgorgement Motion") and had directed that Mr. Leinbach disgorge $3750 in fees to

Debtors. The basis of my May 30, 2008 Order was Mr. Leinbach's failure to disclose the

full amounts of the fees he had received from Debtors within the year prior to this

bankruptcy. For the reasons that follow, I find no error in my grant of the United States

Trustee's Disgorgement Motion. Although I will alter the sanctions granted through the

May 30, 2008 Order,[2] I will otherwise deny the Reconsideration Motion through the

accompanying Order. This Memorandum Opinion constitutes my findings of fact and

conclusions of law.

## II.  BACKGROUND

### A.  The First Case

---

[2]As I will discuss later in this Memorandum Opinion and in the accompanying Order, I
will impose upon Mr. Leinbach the additional sanction of paying interest on the disgorged fees,
dating back to the date the fees were paid to him.

In 2007, Mr. Leinbach filed two Chapter 7 petitions on behalf of Debtors. He filed the first Chapter 7 petition, a bare bones petition lacking substantially all of the required supporting documents, on April 4, 2007 (Case No. 07-20574REF) (the "First Case"). Mr. Leinbach filed a motion to extend the time to file the missing documents on April 17, 2007. He had not informed Debtors (1) that he had not filed all of the necessary documents as part of the initial filing of their petition and (2) that he had filed the motion for an extension of time. Notes of Testimony of May 22, 2008 hearing (N.T.) at p. 13, lines 22 - 25; p. 37, line 15 to p. 38, line 1; p. 51, line 24 to p. 53, line 4. In fact, Mr. Leinbach had led Debtors to believe that he had filed all of the required documents with the initial Chapter 7 petition. N.T. at p. 37, line 15 to p. 38, line 51; p. 51, line 24 to p. 53, line 4. Of course, therefore, Mr. Leinbach had not obtained Debtors' consent to seek the extension of time. N.T. at p. 13, lines 22 - 25. On April 24, 2007, I granted Mr. Leinbach's request for an extension of time, but he nonetheless failed to file the necessary documents when required. I therefore dismissed the First Case on May 9, 2007, slightly over a month after it was filed. Debtors were therefore surprised when they learned that their case had been dismissed and they would be forced to file a new case to protect their home and exemptible assets.

3

## B. The Second Case

Debtors commenced their second case (this above-captioned case) on June 29, 2007, by filing a second Chapter 7 petition.  Mr. Leinbach signed the petition and again entered his appearance as counsel for Debtors.  Concurrent with the filing of the second Chapter 7 petition, Mr. Leinbach filed his Disclosure of Compensation of Attorney for Debtor (the "Disclosure Statement"), pursuant to Fed. R. Bankr. P. 2016(b) ("Rule 2016(b)").  He signed the Disclosure Statement,[3] which certifies in its first paragraph:

> . . . I certify that . . . compensation paid to me within the one year before the filing of the petition in bankruptcy . . . for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:
>
> For legal services, I have agreed to accept ........................ $1,500
> Prior to the filing of this statement I have received ........... $1,500
> Balance due ......................................................................... $0

The Disclosure Statement, certified by Mr. Leinbach, failed to disclose all of the fees that Debtors had paid to Mr. Leinbach in the year preceding the filing of this second case.[4]

Mr. Leinbach also prepared and filed the Debtors' Schedules of Assets and

---

[3]Mr. Leinbach did not file a disclosure statement pursuant to Rule 2016(b) in the First Case.

[4]The fees that Debtors paid to Mr. Leinbach are described at page 9 of this Memorandum Opinion, below.

Liabilities and their Statement of Financial Affairs, which includes the statement:

> 9.  Payments related to debt counseling or bankruptcy.
>
> List all payments made . . . by or on behalf of the debtor to any person, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within **one year** immediately preceding the commencement of this case. (Emphasis in original.)

| Name and Address of Payee | Date of Payment | Amount of Money |
|---|---|---|
| Eric L. Leinbach<br>1603 Butler Street<br>Easton, PA 18042 | 5/2007 | Amount includes filing fee, credit report, online credit counseling, and full attorney fees. $1,500.00 |

Debtors' Statement of Financial Affairs, which was prepared by Mr. Leinbach, also failed to disclose all of the fees that they had paid to Mr. Leinbach in the year preceding the filing of this case. Debtors signed the Statement without having sufficient opportunity to review its contents. N.T. at p.26, line 21 to p. 27, line 4.

On July 12, 2007, less than two weeks after filing this case for Debtors, Mr. Leinbach withdrew as Debtors' counsel[5] and provided no further services to Debtors. Debtors thereafter retained new counsel, who realized that he was obliged to file Amended Schedules and an Amended Statement of Financial Affairs to correct numerous

---

[5] See Consent Order dated July 12, 2007 in In re Leinbach, Misc. No. 07-4002 (Bankr. E.D. Pa. July 12, 2007). Through this Consent Order, Mr. Leinbach consensually subjected himself to being enjoined from further representation of all of his clients, including Debtors, in all bankruptcy cases pending in the Eastern District of Pennsylvania.

errors and omissions in the documents prepared and filed by Mr. Leinbach. Debtors

stated in paragraph 9 of their Amended Statement of Financial Affairs that they had paid

Mr. Leinbach $3750 in the year prior to the commencement of this case. They also

disclosed that they had paid their new counsel, Allan Goodman, Esquire, $1000 to

represent them in connection with the remainder of this case. I granted Debtors their

discharge in this case on November 6, 2007, and the case was closed that same day.


## C. Reopening This Case


After I granted the discharge and this case was closed, the United States

Trustee became aware of the discrepancy between the amount of compensation that Mr.

Leinbach disclosed having received from Debtors on the Rule 2106(b) disclosure

statement he filed in this case ($1500) and the amount that Debtors disclosed that they

had paid to Mr. Leinbach on their Amended Statement of Financial Affairs ($3750). On

April 22, 2008, the United States Trustee filed both a motion to reopen this case and the

Disgorgement Motion. At the May 22, 2008 hearing on the motion to reopen, Mr.

Leinbach consented to reopening the case and I granted the request. Mr. Leinbach also

consented to proceed with the hearing on the Disgorgement Motion, which had also been

scheduled on that date. On May 30, 2008, I entered an Order granting the United States

Trustee's Disgorgement Motion and directing Mr. Leinbach to disgorge and pay to

Debtors all fees paid to him by Debtors for fees both in the First Case and in this case

(which totaled $3750).  Mr. Leinbach thereafter filed his Reconsideration Motion.


# III.  DISCUSSION


## A.  Duty of Counsel To Disclose Compensation


The Bankruptcy Code and Rules impose upon an attorney representing a

debtor in a bankruptcy case an affirmative duty to disclose fully and completely all fee

arrangements and payments.  See Section 329(a) of the Bankruptcy Code, 11 U.S.C.

§329(a) ("Section 329(a)"); Rule 2016(b); Henderson v. Kisseberth (In re Kisseberth),

273 F.3d 714, 720 (6th Cir. 2001); Law Offices of Nicholas A. Franke v. Tiffany (In re

Lewis), 113 F.3d 1040, 1044 (9th Cir. 1997); In re Investment Bankers, Inc., 4 F.3d 1556,

1565 (10th Cir. 1993), cert. denied 510 U.S. 114 (1994).  Section 329(a) provides, in

relevant part:

> Any attorney representing a debtor in a case under this title, or
> in connection with such a case, whether or not such attorney
> applies for compensation under this title, shall file with the
> court a statement of the compensation paid or agreed to be
> paid, if such payment or agreement was made after one year
> before the date of the filing of the petition, for services
> rendered or to be rendered in contemplation of or in
> connection with the case by such attorney, and the source of
> such compensation.

Rule 2016(b) implements this requirement and mandates that counsel for debtor file the

statement required under Section 329(a) within fifteen days after the order for relief is

entered. Rule 2016(b) further requires that counsel for debtor file a supplemental

statement within fifteen days after any additional payment or agreement to pay additional

fees not previously disclosed. These requirements are mandatory, not permissive,

Investment Bankers, 4 F.3d at 1565 quoting In re Bennett, 133 B.R. 374, 378 (Bankr.

N.D. Tex. 1991), and demand direct and comprehensive disclosure.

> Coy or incomplete disclosures which leave the court to ferret out
> pertinent information from other sources are not sufficient. (Citations
> omitted.) Anything less than the full measure of disclosure leaves
> counsel at risk that all compensation may be denied. (Citations omitted.)

In re Saturley, 131 B.R. 509, 517 (Bankr. D. Me. 1991). See also In re McTyeire, 357

B.R. 898, 904 (Bankr. M.D. Ga. 2006). An attorney who fails to comply with the

requirements of Section 329(a) or Rule 2016(b) is subject to "forfeiture of 'any right to

receive compensation for services rendered on behalf of the debtor,' and the

disgorgement of any funds already paid by the debtor." McTyeire, 357 B.R. at 904

quoting In re Woodward, 229 B.R. 468, 473 (Bankr. N.D. Okla. 1999). See also

Kisseberth, 273 F.3d at 721; Lewis, 113 F.3d at 1045; Investment Bankers, 4 F.3d at

1565; and In re Fricker, 131 B.R. 932, 938-39 (Bankr. E.D. Pa. 1991).

I have broad and inherent authority to direct that fees paid to an attorney

representing a debtor be disgorged if the attorney failed to fully and completely disclose

to me that a fee had been paid.  See Kisseberth, 273 F.3d at 721; Lewis, 113 F.3d at 1045

("An attorney's failure to obey the disclosure and reporting requirements of the

Bankruptcy Code and Rules gives the bankruptcy court the discretion to order

disgorgement of attorney's fees"); and Investment Bankers, 4 F.3d at 1565.

During the May 22, 2008 hearing on the Disgorgement Motion, Mr. Gore

identified and provided receipts for three payments to Mr. Leinbach, establishing that

Debtors had paid Mr. Leinbach $3750 in fees within the one year preceding the filing of

this case.  Debtors paid Mr. Leinbach $1500 on July 17, 2006.  N.T. at p. 10, line 7 to p.

11, line 6; and Exhibit T-2.  Debtors paid a second payment of $1500 to Mr. Leinbach on

May 11, 2007.  N.T. at p. 16, lines 1 - 14; and Exhibit T-4.  Debtors paid the third

payment, in the amount of $750, on June 29, 2007 (less than two weeks before Mr.

Leinbach voluntarily abandoned[6] his clients in this case).  N.T. at p. 16, line 15 to p.17,

line 10; and Exhibit T-5.  This is wholly consistent with Debtors' declaration in paragraph

9 of their Amended Statement of Financial Affairs that they had paid Mr. Leinbach $3750

---

[6]Mr. Leinbach has previously questioned my references to the July 12, 2007 consensual
injunction as a "voluntary" withdrawal of his representation of his clients.  See e.g., In re
Wismer, Docket No. 06-21329, and In re Premus, Docket No. 06-21932.  He posits a distinction
without a difference.  Mr. Leinbach voluntarily consented to his exit from this case (and all of his
other cases), which perforce left his clients to either (1) proceed on a pro se basis or (2) obtain
replacement counsel.  The former is very difficult for lay persons, given the intricacies of
bankruptcy practice; and the latter will necessarily result in potentially duplicative, substantial
fees for replacement counsel to get up to speed with the background, history, and status of a case.
In this case, Debtors retained the services of replacement counsel and incurred the additional fee.

I leave it to the United States Trustee to decide whether a full review of all of Mr.
Leinbach's cases in July 2007 is warranted to determine if he had been paid unearned fees in the
days, weeks, and months before abandoning all of his clients on July 12, 2007.  Perhaps in other
such cases, Mr. Leinbach voluntarily refunded his unearned fees.  Perhaps not.

for "consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case."

The Disclosure Statement that Mr. Leinbach filed, however, disclosed only that he had received $1500 from Debtors.[7]  On June 2, 2008, after the May 22, 2008 hearing was held on the Disgorgement Motion, and in an apparent (and very late) attempt to correct his failure to disclose all of his fees, Mr. Leinbach filed an amended disclosure of compensation pursuant to Rule 2016(b).  Even in his amended disclosure, however, Mr. Leinbach certified that he had received only $1851 from Debtors within one year before the filing of this case.  His amended disclosure is belied by the clear testimony of Debtors, recounted above, that they had paid him $3750 within the year before filing this case for his bankruptcy services.

Notwithstanding Mr. Leinbach's assertions to the contrary, Debtors credibly testified that they had paid Mr. Leinbach a total of $3750 within one year prior to the date they filed this case and that they had retained Mr. Leinbach's services to represent them in their bankruptcy case.  See N.T. at p. 10, line 7 to  p. 17, line 13; p. 29, lines 18 - 23; p. 48, line 14 to p. 49, line 12; and p. 50, line 25 to p. 51, line 9.  Mr. Leinbach argues that he was also retained by Debtors to assist them in the sale of their former business.  The

---

[7]I point out again that Mr. Leinbach filed no disclosure of his compensation in the First Case.

evidence, however, does not support him.[8]  Although Debtors may have liked to have sold

their former business, they testified credibly that they did not hire Mr. Leinbach to

represent them in the negotiation or consummation of a sale.[9]  In fact, Debtors tried to

---

[8]Mr. Leinbach refers to certain testimony to support this argument, see Memorandum
filed by Mr. Leinbach on September 23, 2008 at p. 1, wherein he cites the testimony of Mr. Gore
during the May 22, 2008 hearing, at N.T. at p. 37, lines 3-25.  Mr. Gore's testimony, contrary to
Mr. Leinbach's assertions, actually refutes his position.  The following excerpt of Mr. Gore's
testimony, in answering questions posed by Mr. Leinbach, stands in clear opposition to Mr.
Leinbach's position:

> Question: You're saying you objected to me - -
> Answer: Yes.
> Question: - - trying to negotiate the sale?
> Answer: Absolutely and you insisted and assured me that you
> could do this deal and that you wanted one week's period of time
> and that was ultimately - - you - - basically, you browbeat me in
> your office to the point that I finally conceded because you - - if
> you - - you know, you're the attorney, I trusted you and you said
> that you would conclude the sale and as a matter of fact, you even
> wanted to be paid if the sale went forward.
> Question: How much, Mr. Gore?
> Answer: I don't remember the exact amount you wanted.
> Question: Twenty-one hundred dollars, Mr. Gore?
> Answer: You said something of that nature, yep, that if the sale
> was concluded - - if you were able to successfully do it, that you
> would - - that we would pay you and I said if we were able to get
> out of bankruptcy at that point in time, which I said it won't
> happen and these people will not go forward with this, my point
> with you, sir, was your assurance that we would go immediately
> and you would conclude the bankruptcy with the documentation
> and stuff that we had been assured had been filed and when it came
> through and we'd given you the week and we came back to your
> office and we wanted to go forward with the bankruptcy and you
> would not.

N.T. at p. 37, line 3 to p. 38, line1.

[9]Contrary again to Mr. Leinbach's argument, Debtors' testimony proves that Mr.
Leinbach would have been entitled to a fee for his services in connection with the attempted sale
of Debtors' former business only if the sale were concluded.  But no sale was concluded and Mr.

discourage Mr. Leinbach from intervening into their affairs and attempting to sell their

former business because they knew, from their past, unsuccessful dealings with the

potential purchasers, that a sale would never close.  Debtors consented to wait an

additional week to file their second Chapter 7 petition, however, only because Mr.

Leinbach "browbeat" them into doing so.  N.T.  at p. 14, line 4 to p. 15, line 25; p. 35,

line 25 to p. 38, line 3; p. 42, line 22 to p. 43, line 4; p. 51, line 10 to p. 53, line 4; and p.

58, lines 9 - 19.

Based on this evidence, I conclude and find that Mr. Leinbach never

disclosed that he had received $3750 from Debtors within one year of the date that this

case was filed for bankruptcy services rendered or to be rendered.  As a result of his non-

disclosure, Mr. Leinbach violated Section 329(a) and Rule 2016(b) and disgorgement of

all fees paid to Mr. Leinbach by Debtors is appropriate.  See Kisseberth, 273 F.3d at 720;

Lewis, 113 F.3d at 1044; Investments Bankers, 4 F.3d at 1565; McTyeire, 357 B.R. at

904; Saturley, 131 B.R. at 516-17; and Woodward, 229 B.R. at 474-76.

---

Leinbach was therefore entitled to no fee for the attempted sale.  I conclude and find that the
Debtors' testimony supports the United States Trustee's position that Mr. Leinbach was paid by
Debtors only to represent them in connection with their bankruptcy filings, that Debtors did not
want Mr. Leinbach to represent them in connection with the sale of their former business, that
Debtors only consented to wait a week to file their second bankruptcy after Mr. Leinbach
"browbeat" them into doing so, and that only if a sale were successful would Mr. Leinbach have
received a fee for his efforts toward a sale.

See N.T. at p. 14, line 14 to p.15, line 25; and p. 37, line 3 to p. 38, line 1.

## B.  Reasonableness of Compensation

My decision to require that Mr. Leinbach disgorge his entire $3750 fee to Debtors is also supported by the overall unreasonableness of the fee in light of what Mr. Leinbach actually did for Debtors.  See Section 329(b); and In re Williams, 384 B.R. 191, 194 (Bankr. N.D. Ohio 2007).  Disgorgement is required if the compensation received by an attorney representing a debtor exceeds the reasonable value of the services rendered. Id.

Debtors paid Mr. Leinbach $1500 on July 17, 2006 to represent them in connection with the First Case.  Mr. Leinbach filed only a bare bones Chapter 7 petition. He also prepared and filed, without Debtors' knowledge or consent, a motion requesting more time within which to file all of the other required documents.  N.T. at p. 13, lines 22 - 25.  I granted his request for more time, but Mr. Leinbach failed to file the necessary documents within that extended time.  According to Debtors' testimony, which I accept as entirely credible, Debtors had provided Mr. Leinbach with all of the documents and information that he requested prior to the commencement of the First Case.  N.T. at p. 12, lines 16 - 24; p. 14, lines 4 - 9; p.54, line 15 to p.55, line 10.  Debtors believed that Mr. Leinbach had prepared and filed all of the required documents in their First Case.  A little over a month after Debtors' First Case was filed, however, I dismissed it because Mr. Leinbach had failed to file all necessary documents when they were required.

13

Debtors paid Mr. Leinbach an additional $2250[10] in connection with this, their second, Chapter 7 case, and Mr. Leinbach prepared and filed their petition and most of the required documents. Debtors, however, did not have an opportunity to review the Schedules and Statement of Financial Affairs before they were filed by Mr. Leinbach. N.T. at p. 26, line 21 to p. 27, line 4. Debtors also testified that they were not given copies of the filed documents. N.T. at p. 19, lines 10 - 13. The Schedules and Statement of Financial Affairs prepared by Mr. Leinbach were not accurate. N.T. at p. 18, line 17 to p. 19, line 9; p. 21, line 4 to p. 22, line 16; and p. 26, line 24 to p. 28, line 5. Less than two weeks after he filed Debtors' second Chapter 7 petition, Mr. Leinbach withdrew as their counsel and provided no further services to Debtors. See footnote 5 and accompanying text, supra. Debtors were then required to pay $1000 to retain new counsel, who was obliged to file numerous documents to correct the errors in and omissions from the documents prepared and filed by Mr. Leinbach. See the text at pp. 5 & 6, supra.

Mr. Leinbach represented Debtors in the First Case, which was dismissed after only a few weeks because the necessary documents had not been filed. Mr. Leinbach represented Debtors in the second case and then abandoned them less than two weeks later. The compensation received by Mr. Leinbach clearly exceeded the reasonable value of the services he provided.

---

[10]Debtors paid Mr. Leinbach $1500 on May 11, 2007, and $750 on June 29, 2007.

Based on this record, I find that the value of the services rendered to

Debtors by Mr. Leinbach was minimal, at best.  I question whether these services had any

value whatsoever for Debtors.  Had Mr. Leinbach adequately and accurately performed

the services for which he was retained by Debtors in their First Case, Debtors would not

have incurred the additional expenses of the second bankruptcy.  Debtors would not have

had to file the second Chapter 7, they would not have had to retain new counsel, and they

would not have had to file amended documents to correct the errors in and omissions

from the documents prepared and filed by Mr. Leinbach.  Under these circumstances,

disgorgement of the entire $3750 fee paid by Debtors to Mr. Leinbach is appropriate

under Section 329(b).[11]  Williams, 384 B.R. at 194.


## C.  Failure To Reopen the First Case


Mr. Leinbach argues further in his brief that disgorgement of any fees paid

to him by Debtors in the First Case would be inappropriate because Debtors' First Case

was never reopened.  It was not necessary, however, for me to reopen Debtors' First Case

for me to order Mr. Leinbach to disgorge the entire $3750 in fees that he had received

from Debtors.  The court in In re Henderson, 360 B.R. 477 (Bankr. D.S.C. 2006),

---

[11]I am aware that Mr. Leinbach used a portion of the funds that he received to pay filing
fees and certain other expenses.  This does not change my decision that the full $3750 amount
paid to him should be disgorged.

analyzed and properly rejected a similar argument, stating:

> The fact that [a case is] closed does not divest [the bankruptcy
> court] of jurisdiction as jurisdiction is not dependent on the
> technicality of a case being "open." (Citations omitted.)
> Nothing in 28 U.S.C. §1334 suggests that jurisdiction is
> extinguished upon the administrative closing of the case.  To
> hold otherwise would allow .  .  . attorneys to escape review
> of their performance based upon their very failure to provide
> adequate services to debtors which results in the dismissal of
> the case.

360 B.R. at 484.

I agree with and adopt the reasoning of the Henderson court and I reject Mr.

Leinbach's argument.  See also In re Quaker Distributors, Inc., 189 B.R. 63, 68 (Bankr.

E.D. Pa. 1995)("The oversight of the bankruptcy court should and hence must not end

upon the mere dismissal of a case, lest overreaching counsel could frustrate the requisite

court review by the simple medium of encouraging the debtor to seek dismissal. (Citation

omitted.)  In any event, there is no reason to conclude that dismissal of a case could or

should eliminate bankruptcy court review of a debtor's transactions with its

professionals."), aff'd in part, 207 B.R. 82 (E.D. Pa. 1997); and Fricker, 131 B.R. at 938.

I therefore conclude that reopening Debtors' first Chapter 7 bankruptcy case was not

necessary to enable me to direct that Mr. Leinbach disgorge the entire $3750 fee he

received from Debtors in the year prior to the filing date of this case.

Furthermore, his argument must fall because it was in Debtors' second

bankruptcy case that Mr. Leinbach failed to disclose his receipt of the full $3750 received

16

in the preceding year. The offense occurred and was tried as his failure to disclose in this

second case. The opening or reopening of the First Case would have had little to do with

my consideration of Mr. Leinbach's failure to disclose in this case.


## D. Recipient of the Sanction


Mr. Leinbach next argues that disgorgement of the $3750 fee should have

been awarded to the bankruptcy estate and Debtors' creditors rather than to Debtors.[12]

Mr. Leinbach's argument assumes, however, that Debtors' case was administered as an

asset case, which assumption is incorrect. The Chapter 7 Trustee had determined that she

had no assets to administer in this case and has shown no interest in participating in

matters relating to the Disgorgement Motion. Even assuming that the $3750 might

become available to the Chapter 7 Trustee to administer, the potential distribution to

creditors from the disgorged funds, after deducting the costs of administration, would be

---

[12]Mr. Leinbach's suggestion that Debtors should have exempted the $3750 in disgorged fees in their Schedules is entirely inaccurate and without merit. Because debtors had no interest in, or right to, the disgorged funds at the time they filed their Chapter 7 petitions, they had nothing to exempt. In addition, I agree with the position of the United States Trustee: "Debtors could not have known at the time their cases were filed [that] their lawyer was going to be sanctioned for his failure to fulfill his statutory obligations, resulting in the forfeiture of his right to retain the fees they paid to him." Memorandum filed by the United States Trustee on October 10, 2008 at p. 10, note 3.

Finally, the absurdity of this argument looms huge. The suggestion that Mr. Leinbach, who prepared Debtors' exemption schedule, should have or would have identified the disgorgement of his fees as exempt property really puts his argument over the top.

deminimis and the Chapter 7 Trustee would likely abandon the funds to Debtors.    Again,

the Trustee has evinced no intention of wanting to collect or administer the $3750 and I

therefore reject Mr. Leinbach's argument.

Regardless what the Chapter 7 Trustee would or would not have done, Mr.

Leinbach's argument also overlooks the reality that the remedy for a counsel's failure to

comply with the mandatory provisions of Section 329(a) and Rule 2016(b) is in the nature

of a sanction, not simply the recovery of funds to be reclaimed by a debtor.  Kisseberth,

273 F.3d at 720-22; Matter of Prudhomme, 43 F.3d 1000, 1003 (5th Cir. 1995); and In re

Redding, 251 B.R. 547, 552-53 (Bankr. W.D. Mo. 2000), aff'd 263 B.R. 874 (B.A.P. 8th

Cir. 2001).  I have broad and substantial discretion to fashion an appropriate sanction

when counsel for debtor violates the bankruptcy disclosure requirements.  Kisseberth, 273

F.3d at 721; Lewis, 113 F.3d at 1045; Prudhomme, 43 F.3d at 1003; Redding, 251 B.R. at

552-53; and Woodward, 229 B.R. at 476.  In fact, I may exercise this discretion and order

disgorgement of fees whether actual harm does or does not accrue to the bankruptcy

estate.  Redding, 251 B.R. at 553; see also Investment Bankers, 4 F.3d at 1565; and

Woodward, 229 B.R. at 475.  In addition, the language of Section 329(b) contemplates

that I may disgorge a fee and order that it be returned either to the estate or to the entity

that made such payment (which in this case was Debtors).

As a result of Mr. Leinbach's improvident handling of Debtors' cases,

Debtors were forced to (1) file two Chapter 7 bankruptcy cases, (2) pay and retain new

counsel to complete their second case, (3) amend documents to correct Mr. Leinbach's

errors and omissions, and (4) endure the pendency of life in a Chapter 7 case longer than

they should have.  Given the above discussion, I conclude and find that the appropriate

sanction to remedy Mr. Leinbach's transgressions and violations of Section 329(a) and (b)

and Rule 2016(b) is disgorgement of the entire $3750 of fees to Debtors.[13]


## E.  Argument that the Fee Was Entirely Earned


Finally, Mr. Leinbach argues that disgorgement is improper in this case

because the fees he received from Debtors were "entirely earned".  See Memorandum

filed by Mr. Leinbach on September 23, 2008 at p. 2.  I first note that I specifically found

at pages 13 through 15 of this Memorandum Opinion, supra, and I reiterate here, that

these fees were not "earned" because the compensation received by Mr. Leinbach from

Debtors far exceeded the reasonable value of the services he rendered to Debtors.   I

---

[13]I had previously sanctioned Mr. Leinbach for violating Section 329(a) and Rule 2016(b) in In re Ramelah, Case no. 02-26185REF Memorandum Opinion (Bankr. E.D. Pa. October 14, 2008 Memorandum Opinion).  In Ramelah, I directed that Mr. Leinbach disgorge and pay to his clients the entire fee he received from them for both the existing case and a prior case that was closed.

As I stated in Ramelah:

> Beyond the parameters of this case, I note that over the past nineteen months, I have been obliged to write numerous opinions and orders in other cases, both reducing Mr. Leinbach's requests for compensation and imposing sanctions on him for overcharges, inflated rates, excessive time entries, and exaggerated expense charges.

Memorandum at pp. 1 - 2.

further found and I find again that the value of the services rendered to Debtors by Mr.

Leinbach was minimal, if his services had any value to Debtors at all.

Regardless of the value of his services, Mr. Leinbach's argument ignores

his affirmative duty under Section 329(a) and Rule 2106(b) to disclose fully and

completely all compensation he received from Debtors within the one year preceding the

filing of Debtors' bankruptcy petition as well as all fee agreements he had with Debtors.

Kisseberth, 273 F.3d at 720; Lewis, 113 F.3d at 1044; Investment Bankers, 4 F.3d at

1565; McTyeire 357 B.R. at 904; Bennett, 133 B.R. at 378; and Saturley; 131 B.R. at 517.

"The fact that the fee may or may not have been reasonable or have been earned does not

justify a disregard for the rules of disclosure," Woodward, 229 B.R. at 475, and does not

grant Mr. Leinbach immunity from sanctions and disgorgement for violating Section

329(a) and Rule 2016(b).

## F.  Addition of the Payment of Interest to the Sanction

Despite my denial of all grounds raised by Mr. Leinbach to support the

reconsideration of the May 30, 2008 Order, the review that he occasioned has called to

my attention an aspect of the May 30, 2008 Order that I had overlooked.  Upon my further

review of this case, I note Mr. Leinbach's actions in improperly charging Debtors $3750,

holding and using the $3750 for the past year or two, and failing to disclose it.  I believe

that I am warranted, if not obliged, to revise the sanction against Mr. Leinbach to include

the obligation to pay interest at the annual rate of six percent (6%) on the fees he received

from Debtors.  The interest (1) should accrue from the dates he received each of the three

payments of the fee to the date of this Opinion, (2) will be included in the accompanying

Order, and (3) shall be payable with the $3750.

# IV.  CONCLUSION

Mr. Leinbach failed to comply with his statutory duty to disclose his fee

arrangements and receipt of payments from Debtors in this case.  By doing so, Mr.

Leinbach violated Section 329(a) and Rule 2016(b).  In addition, Mr. Leinbach violated

Section 329(b) by receiving compensation from Debtors far in excess of the reasonable

value of the services he rendered for them.  I find that the appropriate sanction to be

ordered is complete forfeiture and disgorgement of the $3750 fees that Mr. Leinbach

received from Debtors, plus interest as described above.  I will therefore deny Mr.

Leinbach's Reconsideration Motion and direct that Mr. Leinbach disgorge and remit to

Debtors the sum of $3750, plus interest.

An appropriate Order follows.

Date: November 25, 2008

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:  GERALD GORE and       :   Chapter 7
        FRANCINE GORE,         :   Case No. 07-21103REF
           Debtors             :

### O R D E R

AND NOW, this 25th day of November, 2008, upon my consideration of the Reconsideration Motion[1] filed by Eric L. Leinbach, Esquire, and in accordance with and based upon the discussion, findings of fact, and conclusions of law stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Reconsideration Motion is DENIED,, except to the extent that the May 30, 2008 Order is amended as set forth below.

IT IS FURTHER ORDERED that my May 30, 2008 Order granting the Disgorgement Motion is HEREBY REAFFIRMED AS AMENDED HEREIN.

IT IS FURTHER ORDERED that Mr. Leinbach shall disgorge and pay to the Debtors, **within ten (10) days of the date of this Order,** all monies paid ($3750) by Debtors to him for fees in Case No. 07-20574 and in this Case No. 07-21103.

IT IS FURTHER ORDERED that Mr. Leinbach shall pay, **within ten (10) days of the date of this Order**, interest at the legal rate of six percent (6%) on the amounts that he is to disgorge, dating from the dates that the payments were made to him,

---

[1]Capitalized terms are defined in the accompanying Memorandum Opinion.

to wit:

      1.  Interest at an annual rate of 6% shall accrue on the disgorged fee of $1500 from July 17, 2006, to the date of this Order ($212.50).[2]

      2.  Interest at an annual rate of 6% shall accrue on the disgorged fee of $1500 from May 11, 2007, to the date of this Order ($139.00).[3]

      3.  Interest at an annual rate of 6% shall accrue on the disgorged fee of $750 from June 29, 2007, to the date of this Order ($63.50).[4]

      IT IS FURTHER ORDERED that, **within ten (10) days of the date of this Order,** Mr. Leinbach shall prepare and file with the Court, with a copy to the United States Trustee, a certification under penalty of perjury that the $3750 in fees plus $415 in interest has been returned to Debtors, which certification shall include the date that he made the payment, the amount of the payment, and a copy of the instrument that he used to make the payment.

      IT IS FURTHER ORDERED that the failure of Mr. Leinbach to comply fully with the provisions of this Order may subject him to sanctions or other penalties upon the request of Debtors or the United States Trustee, including, but not limited to, the

---

[2]Rounded based upon two years and 132 days, assuming that payment is made in accordance with the terms of this Order.

[3]Rounded based upon one year and 199 days, assuming that payment is made in accordance with the terms of this Order.

[4]Rounded based upon one year and 150 days, assuming that payment is made in accordance with the terms of this Order.

payment of all fees and costs incurred by any party to enforce compliance with this Order.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction to

enforce the provisions of this Order, notwithstanding any dismissal of this case.

BY THE COURT

RICHARD E. FEHLING
United States Bankruptcy Judge